Assembly Hall All rise please be seated Do we have the right people here? Got them? Is this the... Oh, you got my order. Or my order. We're up on People of the State of Illinois v. Scott. Is that the case here? No, we've got time. I got them. Are you here for Gathlin? G-H-A-T-H-I-N Gathlin? Oh, I was going to say. That's what I thought. They signed in. It's a normal day. Maybe they're settling their case. In the old days, they lost. You're not in the courtroom when your case is called. That's the highway. How do you pronounce that? G-A-T-H-L-I-N? G-A-T-H-I-N That's the one, I guess. The next case on our docket is 5-13-117. You'll read the marriage of, I think it's Gathan. Gathan. You may proceed, counsel. Thank you. You'll have to speak up because it's being recorded. Okay. May it please the court? Counsel? I actually would like to start off with a question. For the court, would you like to proceed with the motion to strike first? Or should I dive right into it? Just dive right into it. Okay. It's been taken with the case anyway. Okay. Well, what the appeal is about are really three main points. One is the classification of property as being marital or non-marital. The other is the valuation of the property. Then we also have the issue of valuation of a 401K. And we have the issue of whether the court erred in failing to reopen proofs. Regarding the marital versus non-marital property, obviously all property acquired during a marriage is presumed to be marital. And the Henke case that we cite in our brief states that this presumption is overcome only by clear and convincing evidence. And any doubts are resolved in favor of finding that the property is marital. The two properties that are issued here, I'll refer to one as South 2nd Street and the other one as Little Flower Lane. South 2nd Street was purchased June 20th of 2002. Little Flower Lane was purchased on April 23rd, 2003. Obviously during the marriage. This was a very long-term marriage. So it's presumed to be marital. I would ask kind of as guidance for the court would be to look at the trial court's rationale in the supplemental judgment dissolution of marriage as far as why these properties were found to be non-marital. The first rationale was that the properties were in Mrs. Gatton's name. The statute says you do not consider that. There was some evidence pointing toward them being non-marital, right? I mean, there was evidence about where the money came from, from her father, I think, and so forth and so on. I mean, it's not like there was no evidence. Right, but that evidence, you really have to look at it very closely because some of it's very remote in time. However, our standard of review is manifest way to the evidence, which means we can only reverse the trial court if an opposite conclusion is clearly apparent. So tell me why an opposite conclusion, not just, I mean, you're talking about it's presumed to be, I mean, that's what the trial court decides. But from our perspective in reviewing that decision under a manifest way to the evidence standard, why is an opposite conclusion clearly apparent? Well, I think that the opposite conclusion would be, to state it, is that there was not clear and convincing evidence that these properties were purchased with non-marital funds. Okay, so we're kind of proving a negative, but I believe that if you look at the evidence that the court had in front of it, you can see that. The parties had stipulated to some money transfers that came from Mrs. Catan's family and were deposited into a bank account. But these transfers really only totaled $48,000, not the purchase price of these properties. And you have to look at the bank statements. The bank statements that were used were from 1999. Let me stop and ask you this question because the pending motions do permeate a lot of the issues on appeal. So in your argument that the trial court erred in declaring these two pieces of property as non-marital, are you depending on any of these documents that you're asking the court to consider which were not admitted by the trial court? Well, one would be the settlement statement from the sale of the property on Creston Drive. Okay, so let me stop you there then. Let's talk about the motion for a minute, okay? Were these documents that your opposing counsel is asking that we strike, were they admitted into evidence? No, they were not. I mean, you know what the rule is. If they weren't admitted at the trial level, we can't consider them here. Well, on January 1, 2010, it was a post-trial hearing, and Judge Kelly stated, and I quote, Well, obviously the trial isn't closed because you're, and he's referring to Mrs. Catan's attorney, wanting to put in new evidence. So I mean, we're at a point in time, we certainly know that Mr. Catan was not satisfied with the evidence that was presented, and there is additional evidence that he wants to produce. So the court acknowledged that then. Then, in the transcript two pages later, the court says, and he's talking to Mr. Catan, Everything you feel like you didn't get into evidence on that date, you get in on the 22nd. Well, I mean, you can talk about what was said at some previous hearing all you want, but in the end, the trial judge did not admit the evidence. Is that right? That certain piece of evidence. Now, is that the same evidence that is one of your issues on failure to reopen proofs? I don't believe it's necessary because I mean, have you raised the issue before us of the trial court not admitting the documents that you want us to consider here? Yes. Are you saying it was error not to admit them? In the motion to reconsider, yes, I certainly did. Before the trial court? Right. But I'm asking you here, have you raised an issue on appeal that the trial court erred in not admitting that evidence that you're wanting us to consider here? Yes, in the last section of my brief. That's what I just asked you, the failure to reopen proofs. That's the same stuff we're talking about. You are correct. Okay, so you've raised the issue that should have been allowed. It should have been allowed. The court told him everything, and he was pro se at the time, everything that you want to get in, you get in. What does that mean? I mean, a trial court in advance tells you, I'm going to admit whatever you put up. Does that mean whether it's hearsay or whether it's competent proof or whatever? I mean, is a trial court bound? I mean, is he really saying whatever you want to bring in, I'll put in evidence no matter whether the rules of evidence disallow it or not? I believe that that's what he led Mr. Gatton to believe. So you want us to hold a trial court to a promise that anything somebody brings in at a later date, he'll let them put it into evidence? But, Your Honor, he did do that with evidence brought in by Mrs. Gatton's attorney at that same hearing. I mean, you understand what I'm saying, don't you? Yes, but it has to apply both ways. There was an evidence petitioner's exhibits, 18.1 and 18.2, were marked. They were not admitted as evidence, but in the supplemental judgment of dissolution of marriage, he relies on those in listing the totals of the bank accounts and the investment accounts. So he allows Mrs. Gatton's attorney to present new evidence that he relies on in the judgment and disallows Mr. Gatton from presenting what he wanted to present. Is there a transcript of that June 22 hearing in the record? Yes, there is. Okay. And that was the hearing. That's the one that you're complaining about right now, about not admitting things. Right, because the June 1st hearing, he said, yes, I'll let it in. Then the June 22nd hearing, he said no. And another one of those items deals with 401K. And that was a statement on Mr. Gatton's 401K that he was ordered to produce proof. At the trial on January 21st, 2010, the transcript states that Ms. Wilson, Mrs. Gatton's attorney at the time, said she had no problem getting to the bottom of it, meaning the valuation of the 401K. And the parties agreed that Mr. Gatton could produce proof of the difference in the values of the 401K. And he did that. The June 22nd, 2010 transcript shows that Ms. Wilson had that statement, and she marked it as Petitioner's Exhibit 6. And she tells the court that that statement shows that there were earnings of $68,000 in that account. That exhibit is not in the record. But she told the court that there were earnings. And the court relied upon that in finding that the account should have been valued at $171,000. I looked at that statement. It says market gain, and then it says $68,000 with a negative sign next to it. I've done the math. That statement shows that that was a market loss. It was nothing that Mr. Gatton did. Why should we cover up what's the truth here? We should let that information in. The statement was misread. Okay, let me restate the issue then. This is something that was not introduced at trial. Correct. The trial ended. The trial ended with the court saying produce this. Well, and the trial ended. And at that point, everybody testified and so forth. The case was essentially over. Isn't that right? But then on June 1st, he says the trial ended. Just a minute. Let me finish. June 1st wasn't when the trial ended, though, right? Was that a day of trial? That was a post-trial. That was post-trial. So the trial had occurred sometime earlier. Then you come in on post-trial stuff. All right? So the proofs are closed ordinarily, right? So then in post-trial, Mr. Gatton says, I've got this, I've got that. And statements are made by the trial court that you're interpreting as no matter what. You can bring it in and admit it. Then in a subsequent hearing, it's not admitted. But all this occurred after the trial was over. Yes. Okay. So when you talk about why are we covering up the truth, there are rules about you have to put your evidence on during the trial, right? Right. But I believe that the judge relied on what Ms. Wilson was saying about that 401K statement, and she had the statement in her hands. And she was reading off of it. And she said, this is a market game. And it's not. Was that during examination of Mr. Gatton or something? No, it was during that. During argument? Argument, post-trial. I mean, like, I guess you could say if you're reading the transcript. So that was all post-trial too? Correct. After the proofs were closed. But the court relied upon it in the supplemental judgment decision in marriage. You know, if he's relying on statements, the counsel has to. Just tell me how you know he relied on it. Because the judgment, the supplemental judgment dissolution of marriage, regarding the 401K. Put my finger on that. Well, in paragraph 12 on page 4 of the supplemental judgment of dissolution of marriage, states that both parties have investment and retirement accounts that were set forth in part on Petitioner's Exhibit 18 at trial and modified in post-trial proceedings as follows. And then the court lists those amounts pursuant to what was done at the post-trial proceedings. And then it goes on to say at the post-trial proceeding, four more accounts were found and added to the group of investments. So the court did consider additional evidence. Correct. So, you know, I don't think that we can let a $68,000 error stand just by the attorney's assertion that that was a loss. The court really needs to see that statement. And it should be admitted as evidence. Because that's where the truth lies. And similarly with the issue of the marital and the non-marital property, I want to go back a little bit because the court touched on something about that sales statement that was presented but was not admitted as evidence. Mrs. Gatton admitted that a deposit in the bank statement came from the sale of that property. And the record shows that she first testified that that deposit, about $70,000, must have came from her father. Well, until she was confronted with the fact that the sale of this house occurred on a Friday. The exact same amount as what they received in that sale was deposited on Monday in the account, the exact, down to the penny. At that time, she said, oh, no, it must have been then from the sale of this account. So she's backpedaling. But then the inquiry stops there. If you want to say that these properties were purchased with those funds, you have to show them that this property on Creston was purchased with non-marital funds. The only evidence there was Mrs. Gatton verifying. And in the transcript, the court essentially saying, you think that this was purchased with non-marital funds? She says, yes. And that was at the post-trial hearing. But the court still found that those properties were non-marital when I believe that there just was not clear and convincing evidence of that. I mean, there was evidence both ways, though, right? I mean, even if you consider the statement you're talking about, there was evidence both ways. Well, I almost think it was impossible for those properties to prove, especially that clear and convincing evidence, that they were purchased by non-marital funds. The bank statements that were submitted were years before those properties were purchased. And you look at the bank statements, there's money coming in and out of that bank account. It's hopelessly commingled. I mean, there's no evidence that all of the money that went into that account as non-marital stayed in the account and then was used to purchase those properties. So, do you have any further questions? You'll have them. Thank you. Do you have any support from counsel? Counsel, would you tell us what happened at these post-trial hearings? I mean, we had a trial, it ended, then there were post-trial hearings, and some evidence was admitted, some wasn't. Tell us your version of... Unfortunately, Your Honors, counsel and I are both at a disadvantage because we were not trial counsel. We were not present at the times of the hearings. So, we are also limited in reading the transcripts, talking to our counsel. I do work for the attorney who did try the case and have been talking to her extensively. You weren't there personally. I was not there personally, Judge. But my understanding is that the trial was... If you read the transcripts, trials started on our petitioner's motion to strike and motion for sanctions, strike the pleadings and for sanctions, because there have been numerous motions to compel with regard to Mr. Gatton's discovery. What's most important, and it kind of goes into our motion to strike, he had submitted a financial statement in July of 2008 indicating there was $171,000 in the 401k. We had asked numerous times for updated statements, amended statements. The day of trial, he showed up with a handwritten note that said there's $103,000 in this account. So, Ms. Wilson, at the beginning of trial, before we even called witnesses, said, Mr. Gatton should be barred from bringing in any evidence as to a change in value of that 401k account. He should not be allowed to introduce new evidence today that hasn't been previously produced. And if you actually look at the transcript, the court denied our motion for sanctions and said, anything that's been produced up to date, I'm going to let in. And, quote, I can tell you this, there won't be anything admitted that hasn't been produced back and forth at this point, end quote. Now, obviously, the court could have changed his mind later, but that was what was said at the beginning of trial. So would it be accurate that some of these documents that are in dispute were barred as a discovery violation or as a discovery sanction? Well, he didn't bar them. That's not clear, I guess, is it? The documents that are in dispute with regard to our motion to strike were not actually presented to the judge until post-trial motions. Right. So our argument is, and again, they could have… Well, okay. What I just heard you say, reading from the transcript, was that the judge said, I'm not going to allow any documents that haven't already been produced as of today, the date of trial. Correct. That was on page 18 of the transcript when they were arguing the initial motion to strike and our motion for sanctions. He said, I'm not going to admit anything that's not been produced back and forth up to this point. And that was at the beginning of trial. Trial had commenced. It had closed. It was the 27th and 28th of January, 2010. This was a 20-month delay between filing a trial. So this was not a quick divorce where there wasn't plenty of time or ample opportunity for the parties to produce these statements or produce this evidence, which kind of goes to our motion to strike. If you don't consider the settlement statement, the tax return, and the base account statements that Mr. Gatton tried to get in the post-trial motion, I think two of your issues on appeal are completely gone, the marital versus non-marital nature of the two, the Little Flower and the 14 South 2nd Street property, and the valuation of the 401K. To at least some extent, the appellant relies on those documents in those issues. Correct. Okay. And so back to our initial that the court did not err in finding the properties to be non-marital, the court actually made six specific findings on its ruling that the two properties were non-marital. The first was that the properties were placed in the sole name of the petitioner. Both of these parties are from Iran, and basically, according to their culture, too, I don't believe that Mr. Gatton would have allowed these properties to be placed in his wife's name solely. Same as if the court does consider the settlement statement on Creston, Creston was also in the sole name of Mrs. Gatton. In fact, if you read the transcript, Mr. Gatton had called Mrs. Gatton's father the Iranian Rockefeller and said that he did send large sums of money over here, stipulated to those two deposits of the $30,000 and the $17,980, and also admitted that $70,000 was also placed into her non-marital account. The third finding that the court made was that she had over $117,000 to purchase the two properties, which were purchased for about $80,000. Also that there was some testimony that the respondent had Mr. Gatton cashed in two insurance checks for property damage, some pipes had burst at one of the Belleville property, the Little Flower, and instead of repairing the damages, he said, I'm taking this check for work that I've done on these properties and now it's mine, threw the keys at her and said, this is your property, you deal with it. That's how he treated the property during the marriage. He collected rents on the property for her and never paid the real estate taxes. Our client redeemed the taxes on the real estate in 2008 after the case was filed. We learned that the taxes for 2004 and 2005 had been purchased and never been paid. Our client paid those out of her funds. And if it wasn't for her actions, he would have just let the properties go. But every other property that had been jointly owned, he had paid the taxes on throughout the marriage. So I believe those six specific findings are what the court relied on. And I think one of the things is the credibility of the witnesses, that the court is in the best position to determine the credibility of the witness. And if you look at the transcript and the testimony, there was a hard time, Respondent's Counsel had a hard time keeping him on track, keeping him quiet during the hearings. A lot of times he wanted to yell out or speak out. And it kind of shows his arrogance throughout the trial when Petitioner's Counsel was asking him, did you produce receipts, did you produce documents? Why do you think I had to? And he just felt everything I say is evidence and it's true and that's what the court has to believe. Anytime anything contradictory came in, he got upset, he got argumentative. This was the third counsel. And again, he was pro se at the post-trial motions, and I think the court was bending over backwards to try to assist him. But a pro se litigant is held to the same standard as an attorney. So Mr. Gatton was acting as his own attorney at that time. The second issue, which we didn't get to touch on too much, is the valuation of property. One thing that we would like to address is the court, again, took the credibility of the witnesses. Our client was a real estate agent. She brought in several comparative market analysis, had reasons for why she valued the property certain ways, had given all of that evidence to Mr. Gatton. He could have at any time gotten his own comparative market analysis. He could have at any time gotten his own appraisals. Again, there was 20 months between date of filing and date of trial. So I think that the court, we should rely heavily on their judgment to determine the value of the properties. If you read Appellant's brief, they're basically saying because he didn't take what they both said the values were that the court erred, and that's just not what the law is. The law is you can rely on the witnesses and their credibility, and that's, I think, what the judge did. The third issue with regard to the 401K account, again, I do not believe that any evidence was presented at trial to show what the value was at the time of trial in 2010, nor how the value lowered from $171,000 to $103,000, which is all we asked, quarterly statements, monthly statements, outdated statements. And, in fact, the statement that Mr. Gatton did produce was dated December 31, 2008, which was readily available January of 2010. December of 2008 was the statement? Was the statement that he brought in at the post-trial motion. And the trial occurred January of 2010? Correct, Your Honor. Okay. So that could have been produced, and we have been asking for it throughout, and all we wanted to see was where did the money go? I mean, I'm sure Your Honors have statements, and you can see every quarter you get a statement, every month you get a statement. We just wanted the statements to show why the values had changed, and we never received those. What was the date of the statement that showed a value of $171,000? I don't know, Your Honor. Was it earlier than that, December 2008? I know that on his July 2008 financial statement, which was part of the record, is part of the record, is filed with the court pursuant to our local court rules, said there was $171,000 in that account. And back to the reopening of proofs, the party stipulated that our client would be allowed to admit the evidence of her retirement accounts. The four accounts that were found were accounts that the statements had been sent to Mr. Gatton's house for almost two years. There was orders of protection in this case. Our client hadn't lived in the marital residence in over two years, and all of the statements had been sent to Mr. Gatton. After trial, our client, doing the right thing, said these are my accounts. You need to add these to my pile. Let's stipulate to these statements, and that's what happened. And no evidence of those accounts had previously been introduced? No. And they were things in her name? They were in her name. So if anything, it went on her pile and went on her portion. One other thing I'd like to point out to the court as well is that the court did find in its supplemental judgment that in order to equalize the value of the property, Mrs. Gatton should be awarded $58,000. However, the court pulled back and said, well, she should be awarded $58,000 to equalize. Due to the disparity in income, I'm only going to give her $20,000. So therefore, Mr. Gatton has already received more than $38,000. More of that, Mrs. Gatton, when you do consider the equalization of property. And last, their point about the trial court failing to reopen the proofs. Mr. Gatton didn't actually file the motion to reopen proofs. It was some sort of motion for sanction for refusal to comply with court order or something is what Mr. Gatton actually filed, which was a little incoherent and inconsistent. What he was trying to do is bring in all of these things that he had found six months after trial, which my client didn't have a chance to rebut, to produce additional evidence. He didn't lay the foundation. And I think Judge Kelly even says, which is pointed out in her brief, that he's not taking any single-circuit time as evidentiary. And this is only a summation of his case, much like the closing argument. Because the parties did not have closing arguments at the end of trial. They had agreed to just submit proposed judgments. And when those proposed judgments submitted, were they submitted before all this post-trial stuff? I don't believe they were. Right after trial, Mr. Gatton's attorney withdrew or was fired. I'm not really sure what had happened. But almost immediately after trial, Mr. Gatton started representing himself pro se. And I think due to the nature of him not understanding how to actually prepare a supplemental judgment, to my knowledge, I don't believe that those were submitted to the court. Or if they were, I know he submitted one. I don't know if they did, because that would be outside the record. And I'm just trying to get the timing right here. But, I mean, there was a supplemental judgment entered. Was there a judgment entered before all these post-trials? A judgment of dissolution of marriage was entered on January 28th, only finding grounds and dissolving the marriage. Okay, and the supplemental judgment was about everything else. Everything else was addressed at that time. And that didn't happen until after these post-trial proceedings. Correct. It was not entered until December of 2010. And then there was a motion to reconsider, and unfortunately we got here in 2013. But this case is now 2008, six years old. But with regard to what Judge Kelly did say, he specifically said, and I quote, Just so the record is clear, this is at the post-trial hearing in June. The information that Mr. Gatton is presenting to me, I'm not taking as evidentiary. I'm taking as summation. So therefore, your objection that you previously posed, or opposing of a hearsay nature, is probably more of a foundation nature. And just so the record reflects, your objection is also based on, for a foundation basis, as far as whether or not any of this evidence that Mr. Gatton is arguing was actually introduced during the trial proceeding. And then the next goes on to quote, The only way this stuff's ever going to get in front of me is as a summary of his position, and that's how I'm accepting it. So much like a closing argument, or an opening argument in a criminal case, when you show a picture of the jury, or a picture of the victim, it's not something that may be necessarily marked as an exhibit, but it's something that the jury can see to kind of get a perspective. But I think one of the most important things is just the credibility of the witnesses, and if you go through and read the transcript, some of the assertions that Mr. Gatton made that obviously the court found not believable about some of the ways that they kept $18,000 in a macaroni box, and $50,000 was missing from a safe deposit box, and some of the other things that he testified to, to replace a window in his house that was over $2,000, he didn't bring in any estimates for repairs for anything that he claimed lowered the value of any of the properties as well. And one of the things I wanted to point out, because I think the most important is the first classification of property, even under the case that the respondent cites, the court has found that the party's testimony alone is sufficient to trace contributions by clear and convincing evidence. In the Hanke case, the wife had testified that one of the farm buildings was built for $100,000 and that the party still owed $60,000, and that amount was in the form of a junior mortgage on a different farm incurred during the marriage. The court found that her testimony was sufficient to trace the contributions to the non-marital estate by clear and convincing evidence. She didn't bring any sales statements from the house. She didn't bring any bank statements. The court said her testimony alone was sufficient. And that was Hanke that they cited. Additionally, under the Hanke case, what they say is not classified as marital or non-marital were a lot of different pieces of farm equipment. And Mr. Hanke just kind of, this is what I have now, and I bought it all with stuff that I used to have before. He never testified to specific pieces, specific dates, specific amounts. Whereas Mrs. Guitton said the specific property, Little Flower Lane and 14 South 2nd Street are my properties. These are mine. This is how I purchased it. Here's my bank accounts. Here's how much I spent. All of those things she testified to. Thank you. Thank you. Thank you. Thank you. Regarding the page 18 reference where the judge limited the evidence that was going to get in, on page 331, everybody agreed that the information about 401K would get in. As even without these documents, I believe that the court can see that there was not clear and convincing evidence that this was non-marital property. The Hanke case, the portion that counsel cites regards the tracing of contributions from one estate to another. It's not the actual classification. It's a different part of the statute. When the court was asked to classify marital and non-marital property, it did not go solely on that person's word, and that was the farm equipment that was mentioned. That part of the case did not rely on just that person's word. The statement that Ms. Katan had $117,000 to purchase the properties, that was two or three years before they were actually purchased. If the court looks at what was admitted, even ignoring the other documents, you look at deposits, withdrawals, the time that expired in between all of these happening, I believe you cannot find that there was clear and convincing evidence that these properties were purchased with non-marital funds. In fact, and this goes to the credibility of the witnesses, Mrs. Katan testified that $70,000 came from her family. Then she later had to take that back. She was wrong. That was a false statement. I believe that her credibility took a major blow right there when she said that this came from my family, and oh, I'm sorry, it did come from the sale of this Creston property, and we have no information about how that Creston property was acquired, what was used to purchase it. And the Creston property was in her name only? It was, Judge. So the money, that money, even if it came, as you say, came from a property that was at least titled in her name only. But there was a property on, I think it was Hill Street, that was titled in Mr. Katan's name. That was not found to be non-marital. Was it claimed to be non-marital? No. No, because he knew it was purchased during the marriage. Okay. Okay. And as far as the valuation is concerned, Mrs. Katan's market analysis, if you read the transcript on the second day of trial, she comes in with new comparables that were not produced to counsel. Was there an objection? No. Well. And had I been there, there would have. I understand. But I'm dealing with it now. Right, right. And the statement about the 401K, that was the 2008 statement. At the beginning of 2008, it was $117,000. At the end of 2008, it lost $68,000 and was rolled over into an IRA. So that was the money that was left. And was there any – okay, 2008 was a long time from 2010 when the trial took place. Was there no more recent statement about that money, whether it was in an IRA or wherever it was? It was in an IRA, and I have no idea whether there were any statements about the IRA. But I think it's better to rely on what was in the account at the end of 2008 than at the beginning. Well, I mean, the obvious problem with that is anything could have happened to it in that next two years. It could have been double or it could have been half. But it certainly wasn't what it was in January of 2008. So the trial court – that's what the trial court got. That's the numbers he got. But it's wrong. It was misread. It was – as counsel said, he gained $68,000. There's a minus sign next to it. We can't let these things stand over whether someone is perceiving a minus sign. So for all those reasons, judges, I just would like for all of the evidence to be considered, all the truth be known, and that these mistakes not be allowed to happen. They total about $300,000. That's a big difference here as far as what properties are given. Plus the two properties that were classified as non-marital weren't even valued. And that's totally left out of the equation. I think that, you know, the court wants to reverse and remand, but I believe that there is evidence in there that can show that this court can find that those properties should be deemed marital because there was not clear and convincing evidence. And most importantly, there was an error with the 401K, and the court should see that evidence. Thank you. Thank you. Thank you. I'm going to take a short recess and call the next case. Excuse me. Thank you, Your Honor. Thank you. All rise.